873 So.2d 155 (2004)
Tommy STEEN a/k/a Kalin Steen a/k/a Tommie Steen, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2002-KA-01955-COA.
Court of Appeals of Mississippi.
May 11, 2004.
*157 Tommy Steen, appellant, pro se.
Thomas C. Levidiotis, Oxford, Attorneys for Appellant.
Office of the Attorney General by John R. Henry, Attorney for Appellee.
EN BANC.
MYERS, J., for the Court.
¶ 1. On August 8, 2002, a trial was held in the Circuit Court of Calhoun County. The jury found Tommy Steen, a/k/a Kalin Steen, guilty of the sale of cocaine. Steen was sentenced to a term of fifteen years with five years suspended and five years on post-release supervision. After the denial of his post-trial motion, Steen filed the present appeal and requests our review of the following issues:
I. WAS THE VERDICT AGAINST THE WEIGHT OF THE EVIDENCE?
II. DID THE TRIAL COURT ERR IN REFUSING JURY INSTRUCTION D-2?
III. DID THE TRIAL COURT ERR IN AMENDING THE INDICTMENT?
IV. DID THE TRIAL COURT ERR IN FAILING TO INSTRUCT THE JURY ON ALL OF THE ELEMENTS UPON THE FACE OF THE INDICTMENT? *158 V. WAS THE APPELLANT DENIED THE RIGHT TO A FAIR TRIAL BECAUSE OF PROSECUTORIAL MISCONDUCT?
VI. WAS THE APPELLANT DENIED THE RIGHT TO A FAIR AND IMPARTIAL JURY?
VII. DOES THE CUMULATIVE EFFECT OF THESE ERRORS WARRANT REMAND OR REVERSAL?

STATEMENT OF FACTS
¶ 2. On July 21, 1999, Deputies Bubba Willard and Dewayne Winters, of the Calhoun County Sheriff's Department, attended a pre-buy meeting with a confidential informant named Robert Kimble. The purpose of this meeting was to plan a controlled buy. The deputies searched Kimble and the car he would be using. In addition, the deputies equipped Kimble and the car with audio/video equipment. Finally, the deputies gave Kimble twenty dollars to be used in the transaction.
¶ 3. Kimble then proceeded to Steen's house. The two deputies parked four to five blocks away closely monitoring the conversation via audio between Kimble and the person alleged to have been Steen. The majority of the transaction is captured on video. However, the video equipment did not perform properly, and as a result, there is no identifiable footage of the cocaine and money actually exchanging hands. The audio footage reveals that the person alleged to be Steen stated that he would sell Kimble cocaine despite the fact that the two men had some previous dispute.
¶ 4. Steen allegedly gave Kimble twenty dollars worth of cocaine. Kimble then drove to the location where he met the two deputies beforehand in order to conduct a post-buy meeting. Deputy Winters arrived first and Kimble gave the cocaine to him. Moments later, Deputy Willard arrived. Kimble was searched a second time and the audio/video equipment was removed from his body and the car.
¶ 5. The grand jury of Calhoun County returned a one count indictment charging Steen with the sale of cocaine pursuant to Mississippi Code Annotated Section 41-29-139(a). Steen waived arraignment in open court and proceeded to trial. Kimble and Deputy Willard testified on behalf of the State. In addition, Teresia Hickmon of the Mississippi Crime Lab testified as an expert on behalf of the State. At the close of the State's evidence, Steen moved for a directed verdict. The trial judge denied this motion and Steen rested without presenting any witnesses. The jury returned a verdict of guilty and the Honorable Andrew K. Howorth sentenced Steen to a term of fifteen years in the custody of the Mississippi Department of Corrections with five years suspended and five years on post-release supervision.
¶ 6. Steen filed a motion for judgment notwithstanding the verdict, or in the alternative, a motion for a new trial. After a hearing, the trial court denied Steen's post-trial motion. As a result, Steen's counsel filed a timely notice of appeal and brief on his client's behalf. Since that time, however, Steen has requested and been granted permission to proceed pro se in this matter. As a result, Steen has also filed a pro se brief.

LEGAL ANALYSIS

I. WAS THE VERDICT AGAINST THE WEIGHT OF THE EVIDENCE?
¶ 7. Steen argues that the verdict was against the overwhelming weight of evidence for three reasons. First, crucial portions of the video were "blacked-out." Second, the State failed to establish a chain of custody with regard to the cocaine. Finally, the State failed to produce *159 in evidence the twenty dollars used in the transaction. It does not appear that Steen is challenging the sufficiency of the evidence despite the fact that his "post-trial motion" contained a motion for judgment notwithstanding the verdict.
¶ 8. When one challenges the weight of evidence, we must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. McDowell v. State, 813 So.2d 694, 699 (¶ 20) (Miss. 2002). "A new trial will not be ordered unless the verdict is so contrary to the overwhelming weight of evidence that to allow it to stand would sanction an unconscionable injustice." Id. In addition, the credibility of a witness is a question for the jury. Jackson v. State, 614 So.2d 965, 972 (Miss.1993).
¶ 9. Steen directs our attention to deficiencies in the videotape. Specifically, Steen argues that the tape does not depict the exchange of cocaine and money. We agree with Steen's assertion that there is no video footage of the actual transaction of drugs and money. However, this fact alone does not lessen the effect of Kimble's testimony explicitly describing the illicit transaction. In Wilks v. State, 811 So.2d 440, 445 (¶ 17) (Miss.Ct.App.2001), this Court declined to accept a similar argument. As in this case, Wilks involved a controlled buy where audio and video equipment were used. Like Steen, Wilkes also challenged the weight of evidence because the videotape "[did] not show the two exchanging money or crack cocaine." We held that "[w]hile the videotape may not be conclusive proof as to what transaction took place, it certainly is not contrary to the State's case, which was corroborated by [the confidential informant's] testimony." Id. at (¶ 19). We find no error.
¶ 10. Steen also argues that the State did not establish a proper chain of custody with regard to the cocaine because Deputy Winter did not testify. As a result, Steen argues that the evidence should not have been admitted.
¶ 11. Admission of evidence is within the discretion of the trial judge. Thomas v. State, 828 So.2d 1270, 1272(¶ 7) (Miss.Ct.App.2001). "Furthermore, matters regarding the chain of custody of evidence are largely within the discretion of the trial court, and absent an abuse of discretion, reversal will not be granted." Id. We have "recognized that any indication of tampering or substitution of evidence is the proper test for assessing the sufficiency of the chain of custody." Id. If there is a reasonable inference of tampering or substitution, then the proof is insufficient to support a finding that the matter in question is what it purports to be. Butler v. State, 592 So.2d 983, 985 (Miss.1991). However, the court has never required a production of every person who handled the object or an accounting of every moment in order to establish proper chain of custody. Id.
¶ 12. Steen argues that there is a reasonable inference of tampering because there was a discrepancy during cross-examination regarding the date written on the evidence bag. Steen further argues that a reasonable inference of tampering existed because there was "bad-blood" between Kimble and himself. We disagree.
¶ 13. Kimble testified that he gave the cocaine to Deputy Winters at the post-buy location. Deputy Willard testified that Deputy Winters gave it to him. Deputy Willard also testified that he sealed the cocaine in an evidence bag and transported it to the safe at the Calhoun County Sheriff's Department until it was sent to the crime lab. Hickmon testified that she received. *160 the evidence bag at the crime lab and the seal was unbroken.
¶ 14. Deputy Winter's absence alone does not produce a reasonable inference of tampering. In fact, there was no testimony by any of the State's witnesses that would produce such a result. In addition, any accusation of "bad-blood" between Steen and Kimble would have no bearing on whether Deputy Winter should have testified. We find no error.
¶ 15. Finally, Steen directs us to the State's failure to produce into evidence the twenty dollars used in the transaction. The recovery of the currency often proves very helpful to the State's case in similar circumstances. In fact, Deputy Willard testified that he made a habit of photocopying the currency used in controlled buys in hopes of matching the serial numbers after an arrest. However, in the instant case, Steen was not arrested until several days after the transaction because he was but one target in a larger undercover operation using the same confidential informant. As a result, we find no error in the State's failure to produce it.
¶ 16. We find no merit to this issue. Allowing the verdict of guilty to stand would not sanction an unconscionable injustice. Accordingly, we hold that the verdict is not contrary to the overwhelming weight of evidence.
II. DID THE TRIAL COURT ERR IN REFUSING JURY INSTRUCTION D-2?
¶ 17. Steen offered instruction D-2, a cautionary instruction, regarding Kimble's testimony but the trial judge refused it. However, Steen has failed to include jury instruction D-2 in the record. In fact, the record does not contain a single jury instruction offered by Steen. The appellant has the duty to provide us with a proper record for appeal. Smith v. State, 572 So.2d 847, 849 (Miss.1990). This is no mere formality because the trial court's ruling is presumed to be correct and the appellant has the burden of proving reversible error. Id. In other words, if the appellant gives us nothing to review, we must presume that the trial court was correct in refusing the instruction.
¶ 18. In his brief, Steen even states that he is aware of the fact that jury instruction D-2 is not included in the record. Steen asks us to review the trial transcript in order to obtain the substance of the proposed instruction. This, however, simply will not do. While the trial transcript informs us of the reasons why the trial judge refused the instruction, we have no proof of what the instruction actually stated. This error on Steen's part is also no mere formality because our standard of review requires us to read the instructions together as a whole, with no one instruction to be read alone or taken out of context. Howell v. State, 860 So.2d 704, 761 (¶ 203) (Miss.2003). "A defendant is entitled to have jury instructions given which present his theory of the case." Id. "However, the trial judge may also properly refuse the instructions if he finds them to incorrectly state the law or to repeat a theory fairly covered in another instruction or to be without proper foundation in the evidence of the case." Id.
¶ 19. We would also decline to grant relief on this issue because Steen has failed to provide any authority to support the argument that a confidential informant's testimony by itself mandates a cautionary jury instruction. Steen directs our attention to Edwards v. State, 630 So.2d 343, 344 (Miss.1994), but we find that case distinguishable from the case sub judice. In Edwards, the court held that a cautionary instruction was mandatory because the State's case was based solely on an accomplice's testimony and corroborated *161 only by the confidential informant. Id. In the instant case, we have no accomplice or co-defendant and the State's evidence consisted of more than the confidential informant's testimony. We find no merit to this issue.
III. DID THE TRIAL COURT ERR IN AMENDING THE INDICTMENT?
¶ 20. On the day of trial, an order was entered amending the indictment to reflect the correct date of the offense. Steen argues that his constitutional rights were violated when the trial court amended his indictment without the concurrence of the grand jury.
¶ 21. The issue of whether an indictment is fatally defective is an issue of law and enjoys a relatively broad standard of review by this Court. Peterson v. State, 671 So.2d 647, 652 (Miss.1996). A trial court has no authority to grant substantive amendments to indictments. Conley v. State, 790 So.2d 773, 781 (¶ 16) (Miss.2001). "However, unless time is an essential factor in the crime, an amendment to change the date on which the offense occurred is one of form only." Id.
¶ 22. In Griffin v. State, 540 So.2d 17, 21 (Miss.1989), the Mississippi Supreme Court stated:
The test of whether an accused is prejudiced by the amendment of an indictment or information has been said to be whether or not a defense under the indictment or information as it originally stood would be equally available after the amendment is made and whether or not any evidence [the] accused might have would be equally applicable to the indictment or information in the one form as in the other; if the answer is in the affirmative, the amendment is one of form and not of substance.
¶ 23. Steen did not present any defense at trial that would be affected by a change of date. Steen presented no witnesses on his behalf. In fact, both parties seem to be in agreement that the transaction took place on the day reflected in the amended indictment. We find that the amendment to the indictment was merely a change as to form and did not in any way prejudice Steen. As a result, the trial court did not err in allowing the State to amend the date of the indictment.
IV. DID THE TRIAL COURT ERR IN FAILING TO INSTRUCT THE JURY ON ALL OF THE ELEMENTS UPON THE FACE OF THE INDICTMENT?
¶ 24. The indictment under which Steen was charged stated that he "unlawfully, willfully, feloniously, knowingly and intentionally" sold a controlled substance. Steen argues that the jury was not informed properly of these elements because the State's jury instruction S-1 omits the words "willfully" and "knowingly."
¶ 25. We see no error for two reasons. First, the record reveals that no objection was made on these grounds at trial. The "[f]ailure to offer a timely objection to an instruction at trial constitutes a waiver of the issue on appeal." Roberson v. State, 838 So.2d 298, 305 (¶ 27) (Miss.Ct.App.2002). Second, the statute under which Steen was convicted only requires a person to either "knowingly or intentionally" sell a controlled substance. Miss.Code Ann. § 41-29-139(a) (Rev.2001). We find no merit to this issue.
V. WAS THE APPELLANT DENIED THE RIGHT TO A FAIR TRIAL BECAUSE OF PROSECUTORIAL MISCONDUCT?
¶ 26. Steen argues that the prosecutor made improper comments to the jury. During the State's closing argument, the district attorney stated, "[T]his guy is a gambler. He's a gambler by *162 selling dope. He knows the running odds of getting popped. He's a gambler here today. He's gambling that one of you is going to feel sympathetic toward him or some other reason and hang up the jury." Steen's counsel objected to these statements but the trial judge refused to sustain the objection noting that it was closing argument.
¶ 27. The trial judge is in the best position to determine if an alleged objectionable remark has a prejudicial effect. Roundtree v. State, 568 So.2d 1173, 1177 (Miss.1990). The standard of review that we, as an appellate court, must apply to lawyer misconduct during opening statements or closing arguments is whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created. Slaughter v. State, 815 So.2d 1122, 1130 (¶ 45) (Miss.2002). Our supreme court has held that attorneys are allowed wide latitude in closing arguments. Holly v. State, 716 So.2d 979, 988 (¶ 33) (1998). In addition, "[a]ny alleged improper comment must be viewed in the context, taking the circumstances of the case into consideration." Ahmad v. State, 603 So.2d 843, 846 (Miss.1992).
¶ 28. Steen raised this issue in his pro se brief but he does not state in what way he was prejudiced. We also note that the trial court instructed the jury not to be influenced by sympathy or prejudice and that no remarks made by counsel were to be considered as evidence. The fact that the district attorney essentially told the jury to not feel sympathy for Steen because he placed himself in that situation does not rise to the level of unjust prejudice in this case. As a result, we find no merit to this issue.
VI. WAS THE APPELLANT DENIED THE RIGHT TO A FAIR AND IMPARTIAL JURY?
¶ 29. Steen argues that his jury did not reflect a fair racial cross-section of the community, and as a result, denied him his constitutional right to trial by an impartial jury. The elements necessary to establish a prima facie violation of the fair cross-section requirement for an impartial jury are (1) the group alleged to be excluded is a "distinctive" group in the community; (2) the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) this under representation is due to systematic exclusion of the group in the jury selection process. Lanier v. State, 533 So.2d 473, 477 (Miss.1988).
¶ 30. We agree with the State that no attempt was made to establish a prima facie violation because Steen has failed to address any of the above stated elements in his briefs. As a result, we find this issue to be without merit.
VII. DOES THE CUMULATIVE EFFECT OF THESE ERRORS WARRANT REMAND OR REVERSAL?
¶ 31. Since we find no error in any of Steen's preceding issues, we find his final issue regarding the cumulative effect of the alleged errors to be moot.
¶ 32. THE JUDGMENT OF THE CIRCUIT COURT OF CALHOUN COUNTY OF CONVICTION OF SALE OF A CONTROLLED SUBSTANCE AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH FIVE YEARS SUSPENDED AND FIVE YEARS ON POST-RELEASE SUPERVISION AND A FINE OF $1500 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO CALHOUN COUNTY.
*163 KING, C.J., BRIDGES AND SOUTHWICK, P.JJ., THOMAS, LEE, IRVING, CHANDLER AND GRIFFIS, JJ., CONCUR.